**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**CARMEN OCASIO**,

Plaintiff,

v.

**ORIENTAL BANK**,

Defendant.

Civil No. 15-01309 (DRD)

**OPINION AND ORDER**

On January 14, 2015, Plaintiff Carmen Ocasio ("Plaintiff") was dismissed from her position as a compliance clerk at Defendant Oriental Bank ("Defendant" or "Oriental") after a five-day unexcused absence from her employment during which she did not communicate with her employer. Plaintiff alleges she was dismissed in retaliation for exercising her rights under the Family Medical Leave Act of 1993 ("FMLA") 29 U.S.C. §2601 immediately prior to her dismissal. Plaintiff sued Oriental for allegedly violating her FMLA rights, asserting pendent claims based on Puerto Rico law.

Before the Court are Defendant's *Motion for Summary Judgment* (Docket No. 18) and *Motion to Strike Plaintiff's Statement Under Penalty of Perjury in Support of Opposition to Motion for Summary Judgment* (Docket No. 35). Plaintiff filed an *Opposition to Motion for Summary Judgment* (Docket No. 25) and an *Opposition to Motion to Strike* (Docket No. 39).  For the reasons outlined below, the Court **GRANTS** both of Defendant's motions and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims

# I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts," as well as that it is "entitled to judgment as a matter of law." *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes-Irizarry v. Corporación Insular,* 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

a judge." *Reeves v. Sanderson Plumbing Prod.,* 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.,* 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." *Rodríguez v. Municipality of San Juan,* 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. Cɪᴠ. R. 56(e)("The

[C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment.  The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced.");  *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").[1]

If a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. *Velez v. Awning Windows, Inc.,* 375 F.3d 35, 41 (1st Cir. 2004). Furthermore, the district court must take as true any uncontested statements of fact. *Id.* at 41-42; *see* D.P.R.R. 311.12; *see Morales,* 246 F.3d at 33 (**"This case is a lesson in summary judgment practice …. [P]arties ignore [Rule 311.12] at their own peril, and … failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted."**)(internal citations and quotations omitted)**; *see also Euromodas, Inc. v. Zanella , Ltd.,* 368 F.3d 11, 14-15 (1st Cir. 2004). However, this does not mean that summary judgment will be automatically entered on behalf of the moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *See Velez,* 375 F.3d at 42.

---

[1] D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact."  Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation."  D.P.R. CIV. R. 56(c).

## II.     MOTION TO STRIKE "UNSWORN STATEMENT"

Before discussing Defendant's *Motion for Summary Judgment* (Docket No. 18), the Court must address a preliminary evidentiary issue. Plaintiff attached an unsworn affidavit ("Statement" or "Affidavit") (Docket No. 25-3) to support her *Opposition to Motion for Summary Judgment* (Docket No. 25). Defendant has moved to strike this Statement on grounds that it is a "sham affidavit" introduced to manufacture a dispute of material fact otherwise absent from the record. *See* Docket No. 35.

Defendant's *Motion for Summary Judgment* (Docket No. 18) relies heavily on Plaintiff's deposition testimony from February 1, 2016. Together with her *Opposition to Summary Judgment* (Docket No. 25), Plaintiff submitted an *Opposition to Defendant's Proposed Statement of Undisputed Material Facts* (Docket No. 25-1) and the unsworn statement at issue (Docket No. 25-3). Several of the facts that Plaintiff notes in her opposition to both summary judgment and Defendant's Rule 56 statement are exclusively supported by Plaintiff's unsworn statement, dated April 2, 2016, and, ostensibly, by inadmissible phone records attached as exhibits. Defendant maintains that the unsworn statement, signed almost a month after Defendant filed its *Statement of Uncontested Facts*, is a sham intended to create material issues of fact to defeat Defendant's *Motion for Summary Judgment*. *See* Docket No. 35. In her response to the motion to strike, Plaintiff argues that the Statement does not contradict her deposition testimony, but instead clarifies it. *See* Docket No. 39.

### A.  **Sham Affidavit Doctrine**

At the outset, we must note that an affidavit is equivalent to other forms of evidence, such as deposition testimony. *See* 10A Wright & Miller, Federal Practice & Procedure § 2727 (3d ed. 2011) ("facts asserted by the party opposing the [summary judgment] motion, if supported by

affidavits or other evidentiary materials, are regarded as true."). The First Circuit has ruled that even arguably self-serving affidavits are to be considered when resolving motions for summary judgment. *See Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which [she] has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."). However, when a party "has given clear answers to unambiguous questions, [she] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Escribano-Reyes v. Prof'l Hepa Certificate Corp.,* 817 F.3d 380, 387 (1st Cir. 2016) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4-5 (1st Cir. 1994)). District courts are not required to articulate each contradiction between the party's prior testimony and the later filed affidavit in order to reject the statement. *See Orta-Castro v. Merck, Sharp, & Dohme Química P.R., Inc.,* 447 F.3d 105, 110 (1st Cir. 2006) (affirming district court's decision to disregard later filed affidavit that contradicted prior deposition testimony). Moreover, the court may strike out such testimony when the party offering it provides no satisfactory explanation for the changed testimony. *See Torres v. E.I. Dupont De Nemours & Co.,* 219 F.3d 13, 20-21 (1st Cir. 2000) (citing *Colantuoni,* 44 F.3d at 4-5).

We consider the timing of the affidavit and the party's explanation for the discrepancies in determining whether the testimony constitutes an attempt to manufacture an issue of fact aimed at escaping summary judgment. *See Orta-Castro,* 447 F.3d at 110. Specifically, an affidavit filed after opposing party moves for summary judgment suggests ill motive. *See Id.* (citing *Colantuoni,* 44 F.3d at 5; *Torres,* 219 F.3d at 20). Counsel that represents a party during a deposition is expected to address, during the deposition, any confusing questions or inaccurate

6

impressions collected by the deponent. If such issues are not raised by counsel during the deposition, and are later relied upon by the non-moving party to try defeat summary judgment, courts are entitled to conclude that such misunderstanding is an inadequate explanation for the changed testimony. *See Orta-Castro*, 447 F.3d at 110-11. A party may nonetheless elaborate, explain or clarify "prior testimony elicited by opposing counsel on deposition." *Nelson v. City of Davis,* 571 F.3d 924, 928 (9th Cir. 2009). All in all, First Circuit doctrine is unequivocal in that a party may not contradict previously given deposition testimony with a later filed affidavit. *See Colantuoni*, 44 F.3d at 4-5; *Orta-Castro,* 447 F.3d at 110.

## B. <u>Contradiction Through Deposition Testimony</u>

The issue here is whether Plaintiff's affidavit, filed after both the deposition and entry of Defendant's motion for summary judgment, must be stricken because it contradicts Plaintiff's deposition testimony.

In its *Motion to Strike* (Docket No. 35), Oriental claims that two (2) assertions contained in the Affidavit directly contradict Plaintiff's deposition testimony. Both assertions concern discrepancies in dates offered by Plaintiff. First, Defendant contends that Plaintiff testified that she told Oriental she would return to work on Wednesday, January 7, 2015. *See* Docket No. 35 at 3. In her Affidavit, however, Plaintiff alleges she told Oriental that her return date would be January 8, 2015.  Plaintiff specifically states in the Affidavit that "[s]ince my plane was due to arrive at 4:53pm on January 7, my intention was to return to Oriental on January 8." Such testimony contradicts her deposition, where Plaintiff proffered in several occasions that she would report to Oriental on January 7. Plaintiff first wavered as she stated that "[w]ell, I did say that…maybe I'll go back to work on the 7th." (Docket No. 18-1 at 64). But later in the

deposition Plaintiff asserted more affirmatively that January 7 was, in fact, her expressed return date:

> **Q**: **…And, you understood, based on your previous experience using your family medical      leave time that you had to inform your employer when did you expect to return to      work, is that correct.**
> **Plaintiff: Well, I did, in my last call.**
> **Q: And, you said, January 7?**
> **Plaintiff: I said January 7.**

(Docket No. 18-1 at 66) (emphasis ours). Thus, the deposition transcript shows unambiguously that Plaintiff informed Oriental she would resume her duties on the 7th.[2] For the Court to entertain this date change, Plaintiff must explain why her prior testimony is different. In her *Opposition to the Motion to Strike,* Plaintiff avers she "did not testify that she told Oriental that she would be returning to work on January 7," but rather, that "she testified…she told defendant that the possibility existed…she might be there on January 7." Docket No. 39 at 2. Plaintiff ultimately understands that her statements are not contradictory and fails to explain the discrepancies in her testimony.

Secondly, Defendant argues in its *Motion to Strike* (Docket No. 35) that Plaintiff also used the Affidavit to change her testimony about when she first contacted Oriental upon returning to Puerto Rico. Plaintiff proffered at the deposition that she did not communicate with anyone at Oriental between January 7 and January 12. But in the Affidavit, Plaintiff maintains that she called the bank on January 12 and 13. *See* Docket No. 25-3 at 4. Plaintiff's Affidavit again directly conflicts with unequivocal deposition testimony. For example, to the question of whether she "did not communicate with anyone at Oriental until January 14, when you visited

---

[2] As the Court discusses in Part IV, Section 3 of this opinion, employees must inform a return date to their employer in order to enter an authorized FMLA leave. *See Rodriguez v. Smithfield Packing Co.,* 545 F. Supp. 2d 508 (D. Md. 2008).

Oriental's Human Resources Department, is that correct?," Plaintiff answered "Yes." Docket No. 18-1 at 74. The deposition record further contains the following:

> **Q:** What did you do between January 7 and January 12?
> **Plaintiff:** Besides being dead to the world in a bed? Nothing.
> **Q:** Did you contact anyone at Oriental?
> **Plaintiff:** No, I was sleeping.

(Docket No. 18-1 at 70). As with Defendant's first contention, Plaintiff responds in her *Opposition to Defendant's Motion to Strike* (Docket No. 39) that her Affidavit does not contradict deposition testimony. Plaintiff specifically alleges that the testimonies are consistent since what her deposition statement[3] actually meant is that she did not contact the bank *between* those two days—in other words, that she did not call Oriental on January 8, 9, 10, and 11, which would not pre-empt her later testimony stating that she called on the 12th, a day *not between*, and excluded from, the sequence started on the 7th. *See* Docket No. 39 at 3. Thursday, January 8, and Friday, January 9 were work days in which Plaintiff was expected to report to Oriental. Again, Plaintiff must provide a "satisfactory explanation" for this Court to consider her conflicting testimony. *Colantuoni,* 44 F.3d at 4-5. Plaintiff's explanation of this discrepancy is inadequate for the reasons we discuss below.

First, Plaintiff's explanation of how she did not communicate with Oriental during the four days (January 8, 9, 10, and 11) *between* the 7th and the 12th, but that she did call beginning on the 12th, ignores unambiguous deposition testimony to the contrary in which Plaintiff declared she did not contact Oriental until January 14. *See* Docket No. 18-1 at 74; *see also Colantuoni,* 44 F.3d at 4-5; *Morales v. AC Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001) (noting that "[f]ollowing discovery, a party may not use a later affidavit to contradict facts

---

[3] Again, that Plaintiff did not communicate with anyone at Oriental between Wednesday, January 7 and Monday, January 12. *See* Docket No. 18-1 at 70, 74.

previously provided to survive summary judgment, unless the party provides a satisfactory explanation for providing post summary judgment affidavit".).

Secondly, and directly dispositive of the instant issue regarding Plaintiff's contradictory testimony, is the inadmissibility of phone records Plaintiff attached to her *Opposition to Defendant's Motion for Summary Judgment* (Docket No. 25) as evidence of the calls she allegedly made to Oriental on January 12 and 13. In fact, aside from the sham affidavit, these phone records are the sole support Plaintiff provides to sustain her claims about the January 12 and 13 calls, which Plaintiff also includes in her response to Defendant's proposed statement of uncontested facts at Docket No. 25-1. Federal Rule of Civil Procedure 56(e) requires all documentary evidence supporting or opposing summary judgment to be properly authenticated. *See* Fed.R.Civ.P. 56(e). Rule 56(e), thus, mandates that such phone records submitted by Plaintiff be accompanied with an "affidavit . . .  made on personal knowledge, [setting] forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." *See Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000). More specifically, phone records constitute inadmissible hearsay when not attached to an affidavit authenticating its contents by a custodian or other qualified person. *See* Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11); *see also United States v. Burgos-Montes,* 786 F.3d 92, 120 (1st Cir. 1990) (finding phone records admissible because they "were accompanied by a certification of [company's] records in compliance with Fed. R. Evid. 803(6)(D) and 902(11).") Plaintiff has not provided the Court with an affidavit that satisfies the authentication requirements of Federal Rule of Evidence 803(6)(d) and 902(11). Accordingly, the Court has no choice but to deem Exhibit 9 at Docket No. 25 inadmissible. [4]

---

[4] In her *Opposition to the Motion to Strike* (Docket No. 39 at 2), Plaintiff incorrectly refers to the phone records as Exhibit 8. The phone records appended, however, are actually at Exhibit 9 of Docket No. 25.

Finally, the Affidavit's date of submission is also relevant to our analysis. Plaintiff's Affidavit was executed after Oriental filed its motion for summary judgment. In both *Colantuoni*, 44 F.3d at 5, and *Torres* v. *E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000), the First Circuit found such a chronology to be probative of the non-movant's attempt to create an issue of fact. Therefore, this Court finds the timing surrounding the Affidavit as suggestive that it was solely submitted by Plaintiff with the aim of bypassing summary judgment. In light of (1) the Affidavit's timing, (2) Plaintiff's inadequate explanation for her contradictory testimony, (3) and the inadmissibility, under both the Federal Rules of Evidence and Procedure, of Plaintiff's phone records, the Court **GRANTS** Defendant's *Motion to Strike* (Docket No. 35) in its entirety.

## III.     RELEVANT FACTUAL BACKGROUND

D.P.R. Civ. R. 56(c) entitles a party opposing summary judgment to submit, together with its reply to the moving party's statement of uncontested facts, "a separate section [of] additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule." As a preliminary matter, the Court finds that Plaintiff, in its *Opposition to Defendant's Rule 56 Statement* (Docket No. 25-1), did not deny any of Defendant's proposed uncontested facts at Docket No. 19. Rather, Plaintiff admitted most of Defendant's proposed statements and qualified the rest. Some of Plaintiff's responses and qualifications, moreover, include assertions only supported by the Affidavit and phone records deemed inadmissible in Part II of this opinion *See* Docket No. 25-1 at 5. In addition, Plaintiff failed to include a separate section of additional facts, instead proposing her own version in the same numbered paragraphs where she qualified the Defendant's. *See* Docket No. 25-1 at ¶¶ 21, 25, 26.  Given that the Court is not required to "sift through Plaintiff's responses to locate

additional facts," *Malave-Torres v. Cusido,* 919 F. Supp. 2d 198, 207 (D. P.R. 2013), the Court will therefore disregard any additional facts provided by the Plaintiff in qualifying Defendant's that are unsupported by the evidence or otherwise fail to comply with the provisions of Local Rule 56(c). *See Acevedo-Parrilla v. Novartis Ex-Lax, Inc.,* 696 F.3d 128, 137 (1st Cir. 2012).

Having stricken Plaintiff's inadmissible Affidavit and phone records, the Court finds the undisputed material facts of the instant case to be as follows:

1. On August 19, 2010, Plaintiff Carmen Ocasio joined Oriental as a compliance clerk. (Docket No. 18-1 at 18, 19.)

2. While employed by Defendant Oriental from 2010 to 2014, Plaintiff successfully exercised her rights under the Family Medical Leave Act ("FMLA") on three (3) separate occasions. (Docket No. 18-1 at 28, 29, 32). On each of these instances, Plaintiff knew she was required to request the FMLA time to Oriental and to inform the bank of when she would return to work. (Docket No. 18-1 at 36).

3. On December 6, 2014, Plaintiff was informed that her youngest son had been stabbed at a restaurant in the Washington D.C. area. (Docket No. 18-1 at 37, 38).

4. On December 6, 2014, Plaintiff traveled to Baltimore, Maryland, where her wounded son resides. (Docket No. 18-1 at 39). Also on this day, Plaintiff communicated with Grace Soto, an administrative aide at Oriental, and informed her about what happened to her son. Plaintiff told Soto that she was traveling to Baltimore to care for her son and requested Soto to inform her supervisors about her son's medical emergency. (Docket No. 18-1 at 40, 41),

5. On or around December 10, 2014, Ayeisha Vega, an employee at Oriental's Human Resources Department, contacted Plaintiff and sent her the documents required to certify her FMLA leave. (Docket No. 18-1 at 48, 49, 57).

6.  On December 10, 2014, Dr. Jack Sala, a physician attending Plaintiff's son, completed one of the forms required for formal authorization of Plaintiff's FMLA leave, in which he indicated that the estimated period of medical attention necessitated by Plaintiff's son would last until January 6, 2015. (Docket No. 18-1 at 55, 56, 57; *see also* Exhibits 5 and 8 to Docket No. 18-1).

7.  On December 12, 2014, Plaintiff signed the documents required for her FMLA leave. (Docket No. 18-1 at 49, 50; *see also* Exhibit 5 to Docket No. 18-1).

8.  On December 16, 2014, Plaintiff's daughter faxed the FMLA documents completed by Plaintiff and Dr. Sala to Grace Soto at Oriental. Such documents identified the period of Plaintiff's son medical treatment as beginning on December 6, 2014 and concluding on January 6, 2015. (Docket No. 18-1 at 52, 53, 54, 55; *see also* Exhibit 5 to Docket No. 18-1).

9.  On December 22, 2015, Plaintiff spoke to Ayeisha Vega at Oriental's Human Resources Department and informed her that she would return to work on Wednesday, January 7, 2015. (Docket No. 18-1 at 62, 63, 65).

10. Plaintiff returned to Puerto Rico on January 7, 2015, the day she had indicated she would resume her duties at Oriental. (Docket No. 18-1 at 46, 58).

11. Plaintiff did not return to work on January 7, 2015 and did not communicate her absence to anyone at Oriental. (Docket No. 18-1 at 59, 60).

12. From Wednesday, January 7 to Monday, January 12, Plaintiff did not contact anyone at Oriental.[5] (Docket No. 18-1 at 69). During these days, however, Plaintiff spoke over the phone with her children. (Docket No. 18-1 at 77).

---

[5] As discussed earlier, Plaintiff avers both in her *Opposition* to Defendant's statement of undisputed material facts (Docket No. 25-1) and in her *Opposition to Defendant's Motion to Strike* (Docket No. 39) that she did call Oriental on Monday, January 12. In Part II, Section B of this opinion, we disregarded this allegation because, first, it contradicts Plaintiff's unambiguous deposition testimony—stating that she did not contact Oriental until January

13. On January 14, 2015, Plaintiff informed Oriental's Human Resources Department, for the first time, that she had undergone medical treatment for a perforated ear drum since returning to Puerto Rico on January 7. Plaintiff handed a medical certificate to a representative of Oriental's Human Resources Department. (Docket No. 18-1 at 70, 71; Docket No. 25-1 at 4).

14. During her January 14 visit to Oriental's Human Resources Department, Plaintiff was notified that her employment with the bank was terminated because she did not return to work on January 7, failed to contact the bank from January 7th until the 14th, and did not provide any excuse for her absence during those days. (Docket No. 18-1 at 58, 59, 60, 69, 70, 71). Pursuant to Oriental's internal policy, which Plaintiff consented to as a condition for employment, an absence for three (3) consecutive days without informing a supervisor or the Department of Human Resources constitutes abandonment of employment and triggers an employee's immediate termination. (Docket No. 18 at 11).

15. Prior to January 14, 2015, Plaintiff did not provide anyone at Oriental with a medical certificate or excuse as to the absences caused by her own medical condition upon returning to Puerto Rico on January 7. (Docket No. 18-1 at 71).

16. After January 7, 2015, Plaintiff was no longer caring for her convalescent son, raison d'etre of her authorized FMLA leave . (Docket No. 18-1 at 92).

## IV.    DISCUSSION

### A.  Plaintiff's FMLA Claims

Plaintiff claims that Defendant violated her rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Specifically, Plaintiff alleges that, as a proximate result of Defendant's conduct, (1) her right to extended leave to care for her seriously ill child

---

14—and secondly, it is only supported by a self-serving affidavit and an exhibit of phone records that we have stricken as inadmissible evidence.

was interfered with and impaired; (2) that Oriental terminated her employment in retaliation for taking leave to care for her wounded son; (3) and that Oriental violated her right to the same or equivalent employment upon her return from FMLA leave. *See* Docket No. 1 at 5.

In turn, Defendant Oriental contends in its *Motion for Summary Judgment* (Docket No. 25) that Plaintiff cannot show interference with, or retaliation against, the exercise of her FMLA rights. Defendant argues there is no dispute of material facts, for which it is entitled to summary judgment, since Plaintiff was granted the FMLA leave requested and her termination was not in retaliation for exercising her FMLA rights, but for absenting from work for five (5) days without communicating or excusing herself with the bank. *See* Docket No. 18 at 3.

The Family and Medical Leave Act aims to accommodate the "times in a person's life when that person is incapable of performing her duties for medical reasons," *Call v. Fresenius Med. Care Holdings, Inc.,* 534 F. Supp. 2d 184, 191 (D. Mass. 2008) (citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998)), in order "to balance the demands of workplace with the needs of families," 29 U.S.C. § 2601(b)(1). The FMLA entitles eligible employees to twelve (12) weeks of unpaid leave during any twelve (12) month period for, among other things, a serious medical condition that renders the employee unable to perform her job duties or a family member's serious illness. 29 U.S.C. § 2612(a)(1). Upon the employee's timely return, the employer must reinstate the employee to her former position or an equivalent. 29 U.S.C. § 2614(a)(1). The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of these rights. 29 U.S.C § 2615(a)(1).

The process of obtaining FMLA leave consists of two major steps. First, an employee must appropriately notify her employer as to her need of time off. 29 U.S.C. § 2612; 29 C.F.R. § 825.302-.304. In both foreseeable and unforeseeable leave situations, notice "as soon as

practicable" is generally expected to be within one or two days of when the employee learns that FMLA leave is necessary, *Id.* §§ 825.302(a), 825.303(a), except in extraordinary circumstances where such notice is not feasible, *Fresenius Med. Care Holdings, Inc.,* 534 F. Supp. 2d at 197. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. *Id.*

Second, once notice is given, the statute's certification provision affords the employer an opportunity to ask for medical verification of any relevant health condition. 29 U.S.C. § 2613; 29 C.F.R. §§ 825.305-.308. Furthermore, an employee must specify to her employer the likely duration of her absence such that the employer is able to conclude the absence qualifies under the FMLA. *Rodríguez v. Smithfield Packing Co.,* 545 F. Supp. 2d 508 (D. Md. 2008). If the dates of a scheduled leave change, an employee must give her employer notice as soon as practicable, usually within two working days of learning the need for extended leave, excepting extraordinary circumstances. 29 C.F.R. §§ 825.302(a), 825.309(c); *see also Wheeler v. Pioneer Developmental Servs. Inc.,* 349 F. Supp. 2d 158, 164 (D. Mass. 2004).

In this light, we will now first address Plaintiff's claim that Oriental infringed upon her right to care for her son under FMLA leave. *See* Docket No. 1 at 5. To prevail on an FMLA-interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled. *See Pioneer Developmental Servs. Inc.,* 349 F. Supp. 2d at 164; *see also Smith v. Hope Sch.,* 560 F.3d 694, 699 (7th Cir. 2009). The first four (4) factors required to assert a successful interference claim are not at issue: it is uncontested that Plaintiff was eligible for FMLA protection; that the FMLA covers Oriental; that Plaintiff was entitled to

16

FMLA leave to care for her wounded son; and that Plaintiff provided Oriental with sufficient notice to enter FMLA leave in December 2014. Therefore, we turn our attention to the fifth factor, or whether Plaintiff was denied benefits to which she was entitled under the FMLA.

Evaluated in the light most favorable to Plaintiff, the Court finds no evidence that suggests Oriental denied or impaired Plaintiff's FMLA rights to care for her son. It is uncontested that Plaintiff informed Oriental about her need for leave on December 6, 2014, and that Oriental responded in accordance with the FMLA by remaining in communication with Plaintiff and sending her the required documentation around December 10, 2014 to formalize her leave under the statute. Oriental also allowed Plaintiff to enjoy the full extent of the leave she requested until January 6, 2015, the last day of medical support required by Plaintiff's son as indicated in Plaintiff's FMLA leave authorization forms. Although qualifying employees are entitled up to twelve (12) weeks of unpaid leave under the FMLA, they are nevertheless required to tell employers the duration of their leave and, in case of an unforeseen change, to inform employers of the need for extended leave within two working days of learning about such need. 29 C.F.R. §§ 825.302(a), 825.309(c); *see Smithfield Packing Co.,* 545 F. Supp. 2d at 508; *see also Pioneer Developmental Servs. Inc.,* 349 F. Supp. 2d at 164. And while Plaintiff returned to Puerto Rico on Wednesday, January 7, day she was expected to report back at Oriental, Plaintiff did not communicate with anyone at the bank about her putative need for extended leave due to her own medical condition until the 14th—more than four (4) working days after learning, on the 7th, about her need for prolonged leave.  Plaintiff presented no allegations or evidence of extraordinary circumstances that impeded her from providing notice to Oriental within the traditional two-work day window of her need for extended leave. All the evidence therefore supports the conclusion that Plaintiff successfully exercised her FMLA leave rights to care for

her son from December 6, 2014 to January 6, 2014, for which we find no genuine issue of material fact exists as to the FMLA-interference claim.

Plaintiff's second claim is that Oriental terminated her employment in retaliation for taking FMLA leave to care for her son. To establish a retaliation claim under the FMLA, a plaintiff is required to establish a *prima facie* case by showing that (1) the plaintiff availed herself of a protected right under the FMLA; (2) that she was adversely affected by an employment decision; (3) and that there was a causal connection between the protected conduct and adverse employment action. *See Gen. Dynamics Corp.,* 144 F.3d at 161. If Plaintiff satisfies this framework, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's discharge. *See Ameen v. Amphenol Printed Circuits, Inc.,* 77 F.3d 63, 69 (1st Cir. 1998). In turn, if the defendant is able to articulate such a reason, the plaintiff then has the burden of showing the articulated reason is in reality a pretext for retaliating against her for taking protected FMLA leave. *See Id.* at 69. Here, the record is devoid of any evidence that contradicts Oriental's legitimate, non-retaliatory reason for terminating Plaintiff's employment. Plaintiff told Oriental she would resume her duties on January 7th after entering her requested FMLA leave in early December. Plaintiff then returned to Puerto Rico and was absent from work on Wednesday the 7th, Thursday the 8th, Friday the 9th, Monday the 12th and Tuesday the 13th without contacting Oriental to explain her absences until Wednesday, January 14.

At Oriental, an employee who is absent for more than three (3) days without informing a supervisor or Human Resources is deemed to have abandoned employment, warranting that employee's immediate termination. An employee who fails to provide notice of need for extended leave and is absent from work without following employer's leave procedures may be rightfully terminated without infringing rights under the FMLA or 29 CFR § 825.303(a). *See*

*Brown v. Auto. Components Holdings, LLC,* 662 F.3d 685 (7th Cir. 2010); *but see Fresenius Med. Care Holdings, Inc.,* 534 F. Supp. 2d at 184 (denying summary judgment for employer because there were material factual disputes as to whether employee provided appropriate notice of need for FMLA leave). Oriental maintains that it terminated Plaintiff because she violated this internal policy and did not return to work after her authorized FMLA leave concluded on January 6; Plaintiff, however, fails to explain how Oriental's justification is a pretext for her dismissal. Moreover, there is a complete dearth of evidence indicating that Oriental terminated Plaintiff because of Plaintiff's authorized use of FMLA leave from December 6, 2014 to January 6, 2015.

We must remark, however, that in her *Opposition to Summary Judgment* (Docket No. 25), Plaintiff implies what she understands to be Oriental's use of pretext to conceal that Plaintiff was terminated in retaliation for her use of FMLA leave. Specifically, Plaintiff claims that Oriental mailed her a letter, dated January 8, 2015, informing that her employment would be terminated if she did not explain her absence within three calendar days of the letter's date (Docket No. 25 at Exhibit 12). However, Plaintiff alleges that the letter was post marked on January 12, the same day she claims to have called Oriental to inform her own deteriorated medical condition. As explained in Section Two, Part B of this opinion, Plaintiff's testimony of her alleged call to Oriental on January 12 is precluded from our consideration because it was based on a sham affidavit and phone records inadmissible under the Federal Rules of Evidence and Procedure. The record is unclear about whether Plaintiff ever received the letter at her home, but she does claim to have first become aware of it when she visited Oriental's Human Resources Department on January 14—day she was terminated by the bank because of her five (5) unexcused absences since January 7.

Plaintiff further contends that Oriental's sending of the letter undermines their policy of automatically terminating an employee who is absent for three (3) consecutive days without an excuse according to which Plaintiff was discharged. *See* Docket no. 25 at 6. Specifically, since the letter warned about her potential dismissal, Plaintiff argues that the letter itself puts in question Oriental's stated policy of automatic dismissal, asking "why would…a certified letter warning of such dismissal be necessary" if dismissal were in fact automatic. *Id.* Defendant, in turn, maintains that the automatic dismissal "policy was in effect, and…is applicable to all employees, whether Oriental choose to send its employees a letter reminding them of its existence or implementing it." Docket No. 34 at 8.  Defendant correctly points that its dismissal policy has no notification requirement on the bank's part, and that it is automatically triggered by an employee's three-day unexcused absence. Moreover, Plaintiff made no claim and introduced no evidence suggesting that the procedure outlined in the letter, as opposed to the official automatic dismissal policy, had governed other employees' termination proceedings in the past. For these reasons, we conclude the alleged letter sent by Oriental is immaterial to Plaintiff's FMLA retaliation claim.

Plaintiff's final claim is that Oriental violated her FMLA right to the same or equivalent employment upon returning from an authorized leave. The FMLA right to reinstatement is waived if an employee does not return to work after the conclusion of her authorized leave. *See Silva v. City of Hidalgo,* 575 Fed. Appx. 419, 425 (5th Cir. 2014). As we explain above, Plaintiff indicated she would report to work on January 7. Yet, Plaintiff did not resume her duties at the bank on the 7th, and only communicated with Oriental on January 14 to explain her unexcused absences. Thus, the evidence only supports finding that Plaintiff waived her right to reinstatement by absenting from Oriental after January 7 and not contacting the bank until

January 14. Evaluating this evidence in the light most favorable to Plaintiff, we conclude that no genuine issues of material fact exist with regards to Plaintiff's FMLA retaliation and reinstatement claims.

As Plaintiff has failed to establish that Oriental interfered with her FMLA rights and terminated her employment for going on leave, the Court finds that Defendant is entitled to judgment as matter of law and hereby **GRANTS** Oriental's *Motion for Summary Judgment* (Docket No. 18).

**B.  Local Law Claims**

Plaintiff also presents local law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code and Law 80.  Our exercise of supplemental jurisdiction over local law claims upon dismissal of federal claims is discretionary. *See Rodríguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995) (stating "[t]o be sure, the exercise of supplemental jurisdiction in such circumstances is wholly discretionary.") Here, all of Plaintiff's local law claims arise from the same set of alleged acts as Plaintiff's federal law claims. The Court has analyzed the pertinent facts and found no genuine issues of material fact exist. However, in order to conserve judicial resources, the Court rejects Plaintiff's invitation to exercise its discretionary supplemental jurisdiction and therefore **DISMISSES WITHOUT PREJUDICE** her local law claims.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** both Defendant's *Motion to Strike* (Docket No. 35) and Defendant's *Motion for Summary Judgment* (Docket No. 18).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of July, 2016.

S/ DANIEL R. DOMÍNGUEZ
DANIEL R. DOMÍNGUEZ
U.S. District Judge